Jeremy J. Hugus, #7-4630
PLATTE RIVER LAW FIRM
123 South Beech Street
Casper, Wyoming 82601
P: (307) 215-9724
E: Hugus@PlatteRiverLaw.com

*Attorney for Plaintiff Gibson*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RODNEY GIBSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| SIMON CONTRACTORS and ) | |
| S&J SIGNS, INC., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff and hereby avers and complains against Defendants as follows:

### I.     INTRODUCTION

1. This is a truck wreck case. The wreck occurred on September 1, 2018 and was caused by Defendants' negligence in road construction work and failure to warn. As the result of Defendants' negligence, Mr. Gibson sustained damages including bodily injuries, mental and emotional distress, pain and suffering, lost enjoyment of life, lost wages, and other damages.

### II.     PARTIES, JURISDICTION, AND VENUE

2. At all times relevant, Plaintiff was a resident of Clark County, Nevada.

3. At all times relevant, Defendant Simon Contractors, ("SC") was a Wyoming for-profit company with its principal place of business in Wyoming.

4. At all times relevant hereto Defendant S&J Signs, Inc. ("SJS") was a Wyoming for-profit corporation with its principal place of business in Wyoming.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1332(a)(1) as this is a civil action, with complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

6. Venue is proper in this Court pursuant to 28. U.S.C. § 1391.

7. The unlawful acts, violations, negligence, and breaches of duty that give rise to this action occurred within the State and District of Wyoming.

### III.   FACTUAL BACKGROUND

8. On November 16, 2017, Defendant SC accepted a bid to serve as the general contractor for an 11-mile federal highway construction project on I-80 between Cheyenne and Pine Bluffs, Wyoming ("the Project").

9. Defendant SC was to complete the project by October 31, 2019.

10. While acting as the general contractor for the Project, Defendant SC had was required to provide for the safety and convenience of both the general public and residents near the work. Specifically:

   a. SC had a duty not to expose any form of traffic to unprotected vertical drop-offs greater than one inch.

   b. For any edge drop off greater than one inch, SC had a duty to construct an edge slope no steeper than 1V:4H from material provided by the engineer or to provide other appropriate barricade services.

   c. If a slope of 1V:4H or flatter was not practical, SC was required to use a maximum slope of IV:3H.

    d. SC was prohibited from tapering temporary pavement ends more steeply than 1V:6H.

    e. SC had a duty to use temporary traffic control or safety devices to delineate drop offs, unless otherwise directed.

    f. SC had a duty to maintain an adequate surface on traffic-carrying lanes at all times during the Project;

    g. SC had a duty to warn drivers of any dangers, defects, or hazards on the roadway;

    h. SC had a duty to ensure it supplied enough laborers to adequately perform the job;

    i. SC was also required to take responsibility for any injury resulting from the work of a subcontractor.

11. On January 14, 2018, Defendants entered into a subcontract agreement whereby SJS agreed to protect SC's work adequately and properly by using lights, barriers, supports and guards, to prevent injury or damage to persons or property.

12. SJS undertook direct responsibility for damages to persons and property caused by its failure to comply with its obligations under the contract.

13. SJS further agreed it was directly responsible for any negligence in the performance of its work.

14. While construction on the Project was underway, portions of the roadway throughout had edge drop-offs greater than one inch.

15. Where the edge drop-offs exceeded one inch., edge slopes failed to comply with the specifications established by the Department of Transportation Standard Specifications for Road and Bridge Construction, 2010 Edition ("DOT Specifications").

16. Both defendants failed to warn drivers of any potential danger where the edge drop-offs along the project exceeded one inch in violation of the controlling DOT Specifications

17. Both Defendants failed to erect sufficient barriers to protect drivers from any potential danger where the edge drop-offs along the project exceeded one inch.

18. Defendant SC repeatedly failed to provide sufficient laborers to safely perform its work on the project throughout the duration of the project.

19. On September 1, 2018, Plaintiff Rodney Gibson was driving a tractor-trailer westbound on I-80 through a construction zone of the Project.

20. At the time, the right lane of westbound I-80 was closed, forcing drivers to use only the left lane.

21. Shortly after 9:00 a.m., the tractor-trailer was negotiating a right-hand curve near milepost 367.1 in the Project. The driver's side tires of the semi tractor-trailer caught onto the edge of the drop-off.

22. The edge drop-off along the roadway where this happened was greater than one inch.

23. No warning signs were present to warn drivers of the edge drop-off.

24. No barriers were present to prevent drivers from crossing the edge-drop off.

25. As Mr. Gibson attempted to steer the vehicle away from the edge drop-off and back on to the roadway, the vehicle began to spin around facing east.

26. The vehicle then rolled onto the driver's side and slid through the closed lane and off the roadway to the north.

27. The vehicle came to rest off the roadway to the north on its driver's side facing east.

28. Gibson's passenger was ejected from the vehicle during the rollover.

29. Mr. Gibson sustained serious injuries as a result of the rollover wreck, including injuries to his shoulder, knees, back, and hips.

30. Defendants and their employees and staff knew about the hazards of failing to follow DOT specifications including failing to warn and provide barriers when the edge drop off exceeded one inch in height.

31. Defendants intentionally disregarded and failed to follow DOT specifications including failing to warn and provide barriers when the edge drop off exceeded one inch in height.

### IV. FIRST CAUSE OF ACTION
(Negligence – Defendant SC)

32. Plaintiff repeats and fully incorporates all other paragraphs herein.

33. Defendant SC owed Gibson a duty of ordinary care—that is a duty to exercise the due and diligent care normally exercised by a reasonably careful company under similar circumstances.

34. Defendant SC is responsible for its own acts and omissions.

35. Defendant SC breached its duty to exercise ordinary care duty of ordinary care to Gibson.

36. These breaches of duty include but are not limited to the above-enumerated safety violations and breaches of duty as well as the following:

   a. Failure to use ordinary care under the circumstances;

   b. Failure to comply with applicable DOT and governing specifications for sloping edge drop offs throughout the Project;

   c. Failure to provide adequate warnings for edge drop offs;

   d. Failure to erect sufficient barriers to protect drivers from edge drop offs;

37. Defendant SC's breaches of duty were the direct and proximate cause of Plaintiff's past, present, and future damages.

38. These damages include but are not limited bodily injuries, pain and suffering, loss of enjoyment of life, bodily impairment, disability, lost wages and earning capacity, permanent scarring

and disfigurement, emotional distress, psychological trauma, mental anguish, and other economic and compensatory damages.

39. Defendant SC's actions, errors, and omissions were willful and wanton, showing reckless disregard of the consequences, and under circumstances and conditions that a reasonable business would know or have reason to know would, with a high degree of probability, result in serious harm to another.

### V. SECOND CAUSE OF ACTION
**(Negligence – Defendant SJS)**

40. Plaintiff repeats and fully incorporates all other paragraphs herein.

41. Defendant SJS owed Gibson a duty of ordinary care—that is a duty to exercise the due and diligent care normally exercised by a reasonably careful company under similar circumstances.

42. Defendant SJS is responsible for its own acts and omissions.

43. Defendant SJS breached its duty to exercise ordinary care duty of ordinary care to Gibson.

44. These breaches of duty include but are not limited to the above-enumerated safety violations and breaches of duty as well as the following:

   a. Failure to use ordinary care under the circumstances;

   b. Failure to comply with applicable DOT and/or governing specifications

   c. Failure to provide adequate warnings for edge drop offs;

   d. Failure to erect sufficient barriers to protect drivers from edge drop offs;

45. Defendant SJS's breaches of duty were the direct and proximate cause of Plaintiff's past, present, and future damages.

46. These damages include but are not limited bodily injuries, pain and suffering, loss of enjoyment of life, bodily impairment, disability, lost wages and earning capacity, permanent scarring

and disfigurement, emotional distress, psychological trauma, mental anguish, and other economic and compensatory damages.

47. Defendant SJS' actions, errors, and omissions were willful and wanton, showing reckless disregard of the consequences, and under circumstances and conditions that a reasonable business would know or have reason to know would, with a high degree of probability, result in harm to another.

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that this Court enter judgment against Defendants, and each of them, and award Plaintiff the following relief, sufficient to compensate him for all of his injuries, damages, and loss to be determined by the trier of fact at trial, including:

A. Physical bodily injury, medical expenses (past and future), and all other related and necessary expenses or losses caused by Defendants' negligence;

B. Lost wages and diminished earning capacity;

C. Past and future pain, suffering, discomfort, emotional distress, mental anguish, and shock;

D. Disability, scarring, and disfigurement;

E. Past and future loss of enjoyment and quality of life;

F. Punitive and exemplary damages for Defendants' acts, errors, and omissions which showed reckless disregard for Plaintiff's physical, emotional, and financial safety and well-being;

G. Litigation costs and expenses including expert witness and attorney's fees;

H. Pre- and post-judgment interest on all awarded damages;

I. An award of such other remedies and relief as this Court finds just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands a jury trial in this case.

DATED July 14, 2022.

                                                   Jeremy J. Hugus, #7-4630
                                                   PLATTE RIVER INJURY LAW
                                                   123 South Beech Street
                                                   Casper, Wyoming 82601
                                                   P: (307) 215-9724
                                                   E: Hugus@PlatteRiverLaw.com

                                                   *Attorney for Plaintiff Gibson*